```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

In Re: JOHN AGEE,

                              Debtor.      BANKR. CASE NO. 04-41034
_____/

                                               CIVIL CASE NO. 04-40205

JOHN AGEE,

                              Appellant,

v.                                   HONORABLE PAUL V. GADOLA
                                           U.S. DISTRICT COURT

FENTON POURED WALLS, INC.,

                              Appellee.
_____/

**OPINION AND ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT**

     Debtor and Appellant John Agee appeals the May 18, 2004 order of the Bankruptcy Court which sustained the objections of Appellee Fenton Poured Walls, Inc., ("Fenton") to Agee's Chapter 13 plan and conditionally lifted the automatic stay. For the following reasons, the Court will affirm the order of the Bankruptcy Court.

**I.  Background**

     Fenton was involved in the construction of a house on property owned by Agee that was not his principal residence. When Agee did not pay for Fenton's services, Fenton filed a construction lien on the property, pursuant to Michigan's construction lien statute, M.C.L. § 570.1121(3), and commenced a foreclosure action. On January 14, 2003, the Livingston County Circuit Court entered a

foreclosure judgment in favor of Fenton which ordered the sale of the property and set the redemption period at four months.  The sheriff's sale took place on January 14, 2004 at 10:00 a.m. and concluded no later than 11:00 a.m. that day.

Less than an hour later, at 11:41 a.m., Agee filed a petition for Chapter 13 bankruptcy.  Agee's Chapter 13 plan proposed to cure the debt owed on the lien according 11 U.S.C. § 1322(b).  Agee proposed to pay the debt through 36 monthly payments.

On March 19, 2004, Fenton filed its objections to confirmation of Agee's Chapter 13 plan.  Fenton objected to the plan because it effectively extended the period for redemption past the four months set by the state court; was not proposed in good faith; and could not provide that Fenton retain its construction lien, as it was extinguished by the foreclosure sale.

After Agee's response to Fenton's objections and further supplemental briefing, the Bankruptcy Court held a hearing on May 18, 2004 at which time it issued its bench opinion on Fenton's objections.  The Bankruptcy Court held that it could not presently confirm Agee's plan because the statutory right to cure arising from 11 U.S.C. § 1322(b) was extinguished by the foreclosure sale and because the right of redemption allowed by state law could not be extended by a Chapter 13 plan. Bankr. Op. at 23-24.  In so holding, it primarily relied on the Sixth Circuit's case of Federal

Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428, 1435 (6th Cir. 1985).  In addition, the Bankruptcy Court stated that it would grant Fenton relief from the automatic stay in order to allow Fenton to seek confirmation of the foreclosure sale as required under Michigan law.  See M.C.L. § 570.1121(3).

The Bankruptcy Court then requested that Fenton memorialize the court's opinion in an order, have it approved by Agee, and submit it to the Court to be entered.  Fenton drafted the order, but could not obtain approval from Agee.  Therefore, Fenton submitted the order to the court and Agee filed objections.  A status conference on Agee's objections to the order was scheduled for July 21, 2004 at 9:00 a.m.  Because the order was contested, the court informed those present at the status conference that they must return that day at 1:00 p.m. for the contested docket hearing.  When Agee did not appear at the contested docket hearing, the Bankruptcy Judge entered the order at 1:40 p.m.

Agee alleges that another attorney made a special appearance at the status conference on his behalf and informed Fenton that Agee intended to appear and contest the order.  In spite of this information, Fenton allegedly misrepresented to the Bankruptcy Court that Agee had not appeared, causing the court to enter the order without waiting.  Agee also alleges that it was his counsel's understanding that the Bankruptcy Judge Thomas J. Tucker, who was

the judge assigned to the case, always held his contested docket hearings at 2:00 and that the hearing was held at 1:00 p.m. this time because the Honorable Steven W. Rhodes was substituting for Bankruptcy Judge Tucker.

Agee filed his notice of appeal on July 23, 2004.  The court granted Agee a stay pending appeal on August 2, 2004.

**II.  Standard of Review**

"District courts review a bankruptcy court's conclusions of law de novo."  In re McNamara, 275 B.R. 832, 835 (E.D. Mich. 2002) (Gadola, J.).  "A district court will not disturb a bankruptcy court's findings of fact, however, unless those findings were clearly erroneous."  Id.  Further, "[m]ixed questions of law and fact must be separated into their constituent parts and each analyzed using the appropriate standard of review."  In re Eagle-Picher Indus., Inc., 285 F.3d 522, 527 (6th Cir. 2002).  A bankruptcy court's decision to lift the automatic stay is reviewed for an abuse of discretion.  In re Federated Dep't Stores, Inc., 328 F.3d 829, 836 (6th Cir. 2003).

**III. Analysis**

Agee raises four issues on appeal: 1) Whether the Bankruptcy Court erred in applying the bright-line test of Glenn to Agee's property, which is not his primary residence; 2) Whether the Bankruptcy Court erred in holding that the bright-line test of

<u>Glenn</u> applied to the foreclosure sale of Agee's property, which is not final under Michigan law until the entry of an order of confirmation pursuant to M.C.L. § 570.1121(3); 3) Whether the Bankruptcy Court erred by lifting the stay on the basis that Agee could not show that the foreclosure sale would not be confirmed by the state court; and 4) Whether the Bankruptcy Court violated Agee's due process rights by entering the July 21, 2004 order in Agee's absence.

    Section 1322 provides that a Chapter 13 plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default;
>
>  * * *
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b).

    The Bankruptcy Court understood, and Agee agrees, that no controlling authority exists on when a debtor's right to cure under 11 U.S.C. § 1322(b) is cut off for defaults under Michigan's construction lien statute, M.C.L. § 570.1121(3). The Bankruptcy

Court, therefore, looked to the Sixth Circuit's precedent of <u>In re Glenn</u>, which dealt with the statutory right to cure defaults on mortgages on a principal residence. 760 F.2d 1428. In <u>Glenn</u>, the Sixth Circuit was faced with the issue of when a debtor may cure a default on a mortgage on his principal residence under 11 U.S.C. § 1322(b). Specifically, the question was, "once the long-term debt has been accelerated, or foreclosure judgment has been obtained, or a foreclosure sale has occurred", whether the claim was still a claim "on which the last payment is due after the date on which the final payment under the plan is due," such that the right to cure would still be available. <u>Glenn</u>, 760 F.2d at 1431; 11 U.S.C. § 1322(b)(5). The Sixth Circuit held that "the cut-off date of the statutory right to cure is the sale of the mortgaged premises." <u>Glenn</u>, 760 F. 2d at 1435. The Sixth Circuit understood that it was reaching what was essentially a "pragmatic" result. Nevertheless, the Court felt constrained to do so given the lack of any distinct statutory language or legislative history which could direct its interpretation. <u>Id.</u> at 1435. The Sixth Circuit's decision was not arbitrary, though, as it justified its decision with a number of reasons. <u>Glenn</u>, 760 F.2d at 1435-1436.

In determining Agee's case, the Bankruptcy Court noted that the mortgages in <u>Glenn</u> were mortgages on the debtors' principal residences, whereas the lien on Agee's property did not involve his

6

principal residence. Bank. Op. at 7. The Bankruptcy Court noted the further difference that, while the foreclosure sales in Glenn were effectively deemed final at the fall of the auctioneer's gavel, Michigan's construction lien statute requires that the foreclosure sale be confirmed by an order of the state court before the sale is deemed final. Id. at 8-9. Nonetheless, the Bankruptcy Court concluded that "despite the differences between Glenn and this case, however, . . . the principles of the Glenn case, at least the broad general principles apply here by close analogy." Id. at 8. Thus, the Bankruptcy Court held that the bright-line rule of Glenn should be applied to Agee's case, despite the fact that it did not involve the debtor's principal residence and that state law required a court order before the foreclosure sale would be deemed final. The Bankruptcy Court justified this extension by demonstrating how a number of the reasons relied on by the Glenn Court also applied to Agee's case.

### A. Applying Glenn

Agee's first two issues on appeal are essentially disagreements with the Bankruptcy Court's conclusion that the bright-line test of Glenn applies to his case despite these two differences. This Court will uphold that application.

Agee argues that Glenn is inapplicable to his case because Glenn addresses the public policy enshrined in 11 U.S.C. §

1322(b)(2) whereby holders of claims secured by a debtor's principal residence are granted a preferred status so as not to decrease the attractiveness of home mortgages as investment opportunities, which would chill the market for new home construction. See Glenn, 760 F.2d at 1434; 11 U.S.C. § 1322(b)(2)(A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."). Since, Agee argues, the lien involved in his case is not a claim secured by a principal residence, it is not protected by that public policy and Glenn should not be so applied.

That public policy, though, is enshrined in § 1322(b)(2). Throughout his brief, Agee argues that he is attempting to exercise his right to cure under 11 U.S.C. § 1322(b)(2). Yet, §1322(b)(2) refers to a debtors ability to modify the rights of a claim holder; it is § 1322(b)(5) that controls a debtor's right to cure. Glenn was, and this case is, concerned with § 1322(b)(5). Glenn, 760 F.2d at 1431. The Sixth Circuit noted that § 1322(b)(5) does not embody the public policy concern present in § 1322(b)(2):

> Furthermore, in sections 1322(b)(3) and (5), which permit the debtor's Chapter 13 plan to cure defaults, Congress provided no special exceptions for creditors whose claims are secured by a security interest in the debtor's residence. Congress expressly provided that subsection (b)(5), which allows the debtor to cure any default on mortgages that extended beyond the life of the

>Chapter 13 plan, is to operate "notwithstanding paragraph (2) of this subsection."

Glenn, 760 F.2d at 1434.

It is true that the public policy interest of protecting mortgagees of principal residences more so than other mortgagees was a consideration in fixing the cut-off date for the right to cure under § 1322(b)(5). The Sixth Circuit wished not to obliterate the protection afforded by § 1322(b)(2) through a lenient interpretation of § 1322(b)(5). Even so, that consideration was only one of a number of factors which favored a cut-off date of the foreclosure sale. Id. at 1435-36. While the public policy factor is not present in Agee's case, many of the other factors which favor applying Glenn's rule are present, as noted by the Bankruptcy Court. Bank. Op. At 11-17.

Agee's second issue on appeal contends that the Bankruptcy Court erred in applying Glenn's rule to his case, because unlike the foreclosure sales in Glenn, a foreclosure sale under the Michigan construction lien statute is not final until the state court issues an order confirming the sale. M.C.L. § 570.1121(3)("The sale shall become final, subject to the period of redemption, upon the entry of an order of confirmation by the court."). Agee argues that since the foreclosure sale was not confirmed before the filing of his petition, the sale was not

9

final, and because it was not final, he still had the right to cure the default. According to Agee, the Bankruptcy Court incorrectly relied on three bankruptcy cases: In re Crawford, 232 B.R. 92 (Bankr. N.D. Ohio 1999), Ferrell v. Southern Fin., 179 B.R. 530 (W.D. Tenn. 1994), and In re Johnson, 171 B.R. 613 (Bankr. M.D. Tenn. 1994). The Bankruptcy Court relied on these cases to analogize the order of confirmation required by the Michigan construction lien statute to certain post sale procedures required by Ohio and Tennessee law, namely, Ohio Revised Code §§ 2329.17-45 and Tennessee's law governing non-judicial foreclosures. The Bankruptcy Court held as those cases did, that despite questions of finality, the foreclosure sale referred to in Glenn was the fall of the auctioneer's gavel and not the post-sale procedures required by local law. Bankr. Op. at 17-20. The analogy was incorrect, Agee asserts, because M.C.L. § 570.1121(3) specifically states that the foreclosure sale is not final until the order of confirmation is issued, while Ohio and Tennessee's requirements are mere perfunctory review.

As a result, says Agee, the Bankruptcy Court's reliance on one of the Glenn factors was also improper. In picking the foreclosure sale as the event which cuts off the right to cure, the Glenn Court relied on the fact that the foreclosure sale "introduces a new element—the change of ownership and, hence, the change of

expectations." Glenn, 760 F.2d 1435. The Bankruptcy Court stated that this reason also applied to foreclosure sales under the Michigan construction lien statute because, even though no interest passes until the sale is made final by a confirmation order, "the purchaser at a construction lien [] foreclosure sale has at least a contingent right to ownership of the property." Bank. Op. at 13. Agee maintains that no such contingent interest exists because the sale is not final.

In addition, Agee goes one step further, and proposes the alternative argument that, even if the foreclosure sale is deemed final by an order of confirmation, a debtor still retains significant interest in the property, such as the right to possession and the right to rents and profits. He therefore urges that the right to cure should not be extinguished until all of a debtors interest is transferred.

Although there are differences between the Michigan construction lien foreclosure statute and the laws governing the foreclosure sales in Glenn and the Ohio and Tennessee cases relied on by the Bankruptcy Court, those differences are not substantial enough to prohibit Glenn's application. It is precisely differences such as these which led the Sixth Circuit to fix the cut-off point for the right to cure by a bright-line rule. In handing down its ruling in Glenn, the Sixth Circuit stated:

11

> In so ruling we avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next. Thus, in construing this federal statute, we think it unnecessary to justify our construction by holding that the sale "extinguishes" or "satisfies" the mortgage or the lien, or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

Glenn, 760 F.2d at 1436. Agee acknowledges that the point at which a debtor's interest in his property is transferred is dependant on state law and that there is often a disparity between the laws of the various states. In deciding Glenn, the Sixth Circuit was deciding when a federally created right to cure under 11 U.S.C. § 1322(b) was cut off, not when a particular state's foreclosure sale was deemed to be final. Such a bright-line rule requires a certain amount of "independence" from state law:

> The Glenn court's emphasis on a "bright line" independent of state law is most consistent with the conclusion that "sale" means the public event which typically occurs at a courthouse. That event of sale is a point in time easily identified by debtors, lenders and bidders, unlike the elusive, often invisible moments at which other aspects of the transaction occur under state law or by local custom. Any later point in time would have precisely the effect feared by the Sixth Circuit in Glenn——chilling the interest of bidders at the sale.
>
> Several reported decisions applying Glenn acknowledge that its federal rule for application of § 1322(b)(5) is independent of state law. In In re Threet, 60 Bankr. 87 (Bankr. N.D. Ohio 1986), the court rejected a debtor's argument that a foreclosure sale was incomplete because it had not been confirmed by a state court as required by Ohio law. In In re Thomas, 59 Bankr.

>758 (Bankr. N.D. Ohio 1986), a different judge of the same court reached a similar holding, noting the difference between the finality of a sale under state law and sale as a federal bar date for curing mortgage defaults in Chapter 13 cases. See In re Burgess, 84 Bankr. 104 (Bankr. N.D. Ohio 1988) (third judge in same district, following Threet and Thomas).

Johnson, 171 B.R. at 615. The Bankruptcy Court realized this need when it applied Glenn to Agee's case. Bankr. Op. at 23.

Furthermore, contrary to Agee's contention, the post-sale procedures of Michigan's construction lien statute are not so fundamentally different than those of the Ohio and Tennessee foreclosure laws. Sales under both laws are not deemed final until some further action. A sale on execution under Ohio's statute, O.R.C. § 2329.17-45 is not final until the order of confirmation:

>A mortgage foreclosure sale becomes final only upon confirmation by the court ordering the sale. Reed v. Radigan (1884), 42 Ohio St. 292, 294. By statute, the purpose of confirmation is to insure that the "sale was made, in all respects, in conformity with sections 2329.01 to 2329.61, inclusive, of the Revised Code." R.C. 2329.31; see Union Bank Co. v. Brumbaugh (1982), 69 Ohio St. 2d 202, 208. The decision to grant or deny confirmation is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse thereof. Reed, supra; Ohio Savings Bank v. Ambrose (1990), 56 Ohio St. 3d 53, 55.

Lorain County Bank v. Berg, 1992 Ohio App. LEXIS 3799, *8-9 (Ohio App. 1992). Also, a foreclosure sale under Tennessee's law governing non-judicial foreclosures is not deemed final at the fall of the auctioneer's gavel. Instead "upon the indenture trustees

execution of the deed (or similar memorandum required by the Tennessee statute of frauds) and payment of consideration, a non-judicial foreclosure sale becomes final." Ferrell, 179 B.R. at 531.

Given this understanding of Glenn's bright-line rule, the Bankruptcy Court's reliance on the fact that the foreclosure sale "introduces a new element——the change of ownership and, hence, the change of expectations," was not in error. Glenn, 760 F.2d 1435. The Sixth Circuit understood that a foreclosure sale may not be final until some further action required under state law. The Bankruptcy Court noted as much:

> And I would note on this point that one of the consolidated cases that the Glenn case decided ... was a case from Michigan involving ... a mortgage foreclosure by advertisement and in those situations ... title does not pass to the buyer until the right of redemption expires with no redemption so that a debtor does retain an ownership interest after the Sheriff's auction.
> Notwithstanding that fact about Michigan law which was one of the cases before the 6th Circuit, [the Court] cited this [] factor, number C [] on page 1435, in support of its view that the actual foreclosure sale itself is the cut-off point.

Bankr. Op. at 15. The Sixth Circuit, and the Bankruptcy Court, were not relying on this factor insofar as a foreclosure sale necessarily brings about a final change of ownership, but because it brings about a "change of expectations." Glenn, 760 F.2d 1435. This change of expectations is synonymous with the "contingent

14

right to ownership of the property" which the Bankruptcy Court relied upon.  Bank. Op. at 13.

In essence, the Bankruptcy Court was faced with the same situation as in Glenn: a determination had to be made when the right to cure was to be cut off for defaults under the Michigan construction lien statute and no case law addressed the issue.  The Bankruptcy Court decided to apply Glenn after thoroughly examining its reasoning, as well as the reasonings of those Courts which had already applied Glenn.  This Court finds no error in the Bankruptcy Court's decision.  Moreover, having found that the cut-off point for cure was appropriately set at the foreclosure sale, there is no need to address Agee's alternative argument that because a debtor still retains certain interests even after the foreclosure sale is final, the right to cure should not be extinguished until all of a debtors interest is transferred.[1]

---

[1] Agee also argues, in the alternative, that the right to cure is not extinguished until the very end of the day of the foreclosure sale, i.e., at midnight.  Briefly, his argument goes as follows: When counting backwards from the day the right of redemption expires, the actual day of the sale is not included.  The purchaser's title status is dependant on whether the right to redemption exists, and through this counting method the right to redemption does not appear to exist on the day of the sale.  Therefore, the sale must not be complete until midnight the day of the sale.  It is purely a matter of convention and convenience, however, that when counting out days from an event, one never counts the day of the event.  Adhering to this convention does not negate the fact that the event happened.

**B. Lifting the Stay**

Agee's third issue on appeal concerns the Bankruptcy Court's decision to conditionally lift the automatic stay to allow Fenton to seek confirmation of the foreclosure sale in state court. Agee contends that this decision was in error because the Bankruptcy Court only considered whether Agee could show that the sale would not be confirmed, when it should have held an evidentiary hearing to determine itself if the sale would not be confirmed. It is within the Bankruptcy Court's discretion to decide whether to lift the automatic stay. In re Federated Dep't Stores, Inc., 328 F.3d at 836.

The Bankruptcy Court decided to lift the stay because Agee failed to demonstrate either that the foreclosure sale would not be confirmed by the state court, or that the state court would, in its further proceedings, indicate that the redemption period under state law would extend past the 36 months Agee had allotted in his plan to pay back the debt. Bankr. Op. at 24. In addition to holding that a foreclosure sale cuts off the right to cure, Glenn held that "the automatic stay provisions of 11 U.S.C. § 362(a) do not toll or extend the running of state statutory periods of redemption following foreclosure sales [and] 11 U.S.C. § 105(a) does not empower the courts to issue separate orders tolling statutory redemption periods absent exceptional circumstances such

16

as fraud, mistake, accident, or erroneous conduct." Glenn, 760 F.2d at 1442. The Bankruptcy Court held that Agee's Chapter 13 plan could not be confirmed because it attempted to 1) cure the default even though the right to cure had been extinguished by the foreclosure sale, and 2) extend the period of redemption to 36 months, from the four months provided by the foreclosure judgment. Bankr. Op. at 23-24. Therefore, if Agee could demonstrate that the sale would not be confirmed or that the state court would extend the redemption period such that plan's provision to pay the debt would not run past the redemption period, then the plan could be confirmed. Because Agee had not yet argued in the case that the sale would not be confirmed, or that the statutory period of redemption would be extended by the state court, the Bankruptcy Court found cause to lift the stay. Bankr. Op. at 25. Furthermore, the Bankruptcy Court found that lifting the stay would not prejudice Agee to the extent that lifting the stay would allow him to contest confirmation of the sale or seek extension of the redemption period. Given these circumstances, this Court holds that the Bankruptcy Court did not abuse its discretion by lifting the stay.

**C.   Entering the Order**

Agee's fourth and final issue on appeal concerns the Bankruptcy Court's decision to enter the order denying confirmation

17

and lifting the stay in the absence of Agee's counsel. Agee asserts that this was a violation of his due process rights and that it was caused by the Bankruptcy Court's general procedure for administering its Chapter 13 docket.

As the Supreme Court has stated,

> the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked. But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.

Link v. Wabash R. Co., 370 U.S. 626, 632 (1962)(citations and quotations omitted). Agee is unsuccessful in demonstrating how the Bankruptcy Court's general procedures fail to provide a sufficient opportunity to be heard upon adequate notice, nor does he demonstrate how he was denied due process in this instance.

Agee provides the affidavit of Robert Malleis, who avers that he appeared at the 9:00 a.m. status conference on behalf of Agee's counsel. Reply, Ex. E. It was at that status conference that the Bankruptcy Court informed the parties that they were to return at 1:00 p.m. for the contested docket hearing. This personal notice is more than enough to meet the requirements of due process. Regardless of Agee's counsel's understanding that the contested

docket hearing normally occurs at 2:00 p.m., Agee's counsel, through his choice of substitute counsel, was given notice that the hearing was to take place at 1:00 p.m. later that day.  The Bankruptcy Court was allowed to expect Agee's counsel to have knowledge of that notice.  Furthermore, Fenton's alleged misrepresentations are of no consequence, because the Bankruptcy Judge waited well past 1:00 p.m. before entering the order.

**IV. Conclusion**

**ACCORDINGLY, IT IS HEREBY ORDERED** that, for all the reasons set forth above, the order of the Bankruptcy Court, entered July 21, 2004, and the underlying bench opinion, entered May 18, 2004, are **AFFIRMED**.

**IT IS FURTHER ORDERED** that Fenton is awarded costs in accordance with Bankruptcy Rule 8014.

**SO ORDERED.**

Dated:   August 12, 2005              s/Paul V. Gadola
                                      HONORABLE PAUL V. GADOLA
                                      UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   August 12, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
_____,
and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  Steven F. Alexsy; Kevin W. Kevelighan         .


                                             s/Ruth A. Brissaud
                                             Ruth A. Brissaud, Case Manager
                                             (810) 341-7845